[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14290
_____

D.C. Docket No. 6:12-cv-00723-RBD-KRS

DWAINE HARGIS,

Plaintiff-Appellant,

versus

CITY OF ORLANDO, FLORIDA,
OFFICER THEODIS SPRINGER,
in his official and individual capacity,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 25, 2014)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Appellant Dwaine Hargis appeals the district court's grant of summary judgment to Theodis Springer, an officer with the Orlando Police Department, and the City of Orlando (collectively, the Appellees) on Hargis's second amended complaint, which alleged causes of action under 42 U.S.C. § 1983 and state law arising from Officer Springer's investigatory stop and subsequent arrest of Hargis. After review of the record and consideration of the parties' briefs, and having had the benefit of oral argument, we conclude none of the arguments raised by Hargis have merit and we therefore affirm.

## I.  BACKGROUND

Before beginning his shift on the evening of May 12, 2008, Officer Springer received a briefing about recent commercial burglaries that had been taking place in the early morning hours along International Drive in Orlando, Florida.  Officer Springer's squad, as well as several other units, were conducting an operation and were therefore on the lookout for potential burglars when they went out on patrol that evening.

While on patrol along the International Drive corridor that night, Officer Springer observed Hargis at approximately 1:00 a.m. or 2:00 a.m. driving slowly from the back of a restaurant toward the front of the building.[1]  In his deposition,

---

[1] Although Hargis stated he was driving to a gas station to purchase items and that he was driving slowly because he was in a parking lot, Hargis's reasons for his actions are immaterial to our qualified immunity analysis.  Instead, the issue is whether a reasonable officer in Springer's

2

Hargis testified that after he drove slowly from around the side of the building, and then turned around and headed back the way he had come, Officer Springer activated the lights on his marked patrol car and Hargis pulled his car over. Officer Springer immediately called for backup because he was concerned about his safety given the time of day, the fact that he was alone, and because Hargis's car contained three individuals.[2]

Hargis's and Officer Springer's versions of events differ significantly as to what happened after Officer Springer stopped Hargis. For instance, Officer Springer testified in his deposition that he waited for backup to arrive and that he and the other officers directed Hargis to exit the vehicle and walk back to them. We recount the facts in the light most favorable to Hargis, however, because this case comes to us on summary judgment. *See Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) ("In determining the relevant set of facts at the summary judgment stage, we must view all evidence and make any reasonable inferences

place could have thought the facts were such that he could reasonably conclude Hargis was engaging in or about to engage in criminal activity. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 n.8 (11th Cir. 1993). As we have explained, "to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.* at 1557.

[2] It is unclear whether Officer Springer observed the other two individuals in the car prior to stopping the vehicle. Whether Officer Springer observed the other two individuals before or after stopping the car, however, is immaterial to our resolution of the issues on appeal.

that might be drawn therefrom in the light most favorable to the non-moving party." (internal quotation marks omitted)).

Accepting Hargis's account of the incident, after Hargis stopped his car, Officer Springer approached the car and asked Hargis for his license and registration. Hargis handed the officer his information and asked why he had been stopped. Officer Springer did not respond and walked back to his police car.

Approximately 30 seconds later, Hargis's car was surrounded by police officers and one of the officers pointed a shotgun at Hargis. The other officers also had their guns drawn. The officer with the shotgun stood by the door on the driver's side of Hargis's car and held the shotgun inches away from Hargis's face while telling Hargis that he would shoot Hargis in the face if he moved. Other officers opened the passenger side door and the back passenger door.

Officer Springer returned to Hargis's car and asked Hargis to exit the vehicle. Hargis asked why he needed to get out of the car, and the officer with the shotgun told Hargis to exit the vehicle immediately. During his deposition, Officer Springer testified Hargis was acting unusually nervous and that he was shaking. Hargis was taken to the back of his car where Officer Springer grabbed his arm and began to search him. Hargis protested that he did not want to be searched and jerked his arm away. Another officer grabbed Hargis and he was put in handcuffs and then searched. During the search, Officer Springer discovered a gun in a

4

holster on Hargis's waistband.  Hargis did not have a permit for the weapon.  After Officer Springer found the gun, Hargis was thrown to the ground and the search continued.  Eventually Hargis was told to get on the curb.  Hargis testified in his deposition that when he did not move quickly enough, an officer kicked him in the back of the head, causing his chin to hit the curb.

Approximately 30 minutes later, Hargis was put in a squad car and taken to the police station.  When Hargis was taken to the jail, he was refused admission because of the injuries on his chin.  Accordingly, officers took Hargis to the hospital where he received stitches before he was returned to the jail.

Hargis was subsequently charged in state court with being a felon in possession of a firearm.  During his state criminal proceedings, Hargis filed a motion to suppress the gun found on his waistband as well as all of the evidence obtained as a result of Officer Springer's stop.  The trial court granted the motion, and the State of Florida voluntarily dismissed its appeal of that ruling.  The State ultimately dropped all charges against Hargis.

Hargis then filed this lawsuit against the City of Orlando (the City) as well as Officer Springer in his individual and official capacities.  In his second amended complaint, Hargis alleged in pertinent part that Officer Springer violated the Fourth and Fourteenth Amendments by intentionally intruding upon his solitude, seclusion, or private affairs and concerns, that Officer Springer's intrusion "would

be highly offensive to a reasonable person and was unwarranted and unjustified," and that Officer Springer "wrongfully and unlawfully, and without any order, warrant or process of any Court authorizing him to do so" caused Hargis to be wrongfully arrested and imprisoned.  Hargis further alleged that the City, through its employees and agents acting in the course and scope of their duties as police officers, searched him without consent or probable cause.

The Appellees moved for summary judgment, arguing that Officer Springer was entitled to qualified immunity because he had reasonable suspicion to stop Hargis.  The Appellees further maintained that the City was entitled to summary judgment because Officer Springer did not violate Hargis's constitutional rights and it did not have a policy or custom that caused a violation of Hargis's constitutional rights.

In response, Hargis argued that Officer Springer violated his clearly established right to be free from unreasonable searches and seizures.  Hargis maintained that none of his actions in the parking lot were consistent with criminal behavior and that the time of day and history of criminal activity in the area did not justify the stop.  Hargis stated Officer Springer lacked arguable probable cause to arrest him because it was not objectively reasonable to believe probable cause existed for an arrest and thus Officer Springer was not entitled to qualified immunity.  Hargis contended the facts showed only that he was using the parking

lot as an alternate route to his destination and Officer Springer therefore lacked arguable probable cause to stop him.[3]  Hargis further asserted that, although Officer Springer attempted to justify his subsequent detention and search of Hargis based on the fact Hargis was acting unusually nervous, Officer Springer failed to acknowledge that another officer had his shotgun pointed at Hargis's face.  Hargis also maintained that Officer Springer was collaterally estopped from arguing the stop was supported by reasonable suspicion because the state trial court already settled that issue in granting Hargis's motion to suppress during his criminal proceedings.

Regarding his claims against the City, Hargis argued the City's training and supervision was deficient and the City ignored the deficiencies.  Specifically, the City failed to train police officers about the proper standard for conducting investigatory stops and it had a policy which encouraged officers to detain individuals in an unlawful manner.

The district court granted the Appellees' motion for summary judgment as to the § 1983 claims.  The district court first found that collateral estoppel did not apply because Officer Springer and the City were not parties to Hargis's state

---

[3] Although Hargis argued that Officer Springer lacked arguable probable cause to stop him, Officer Springer was entitled to qualified immunity if there was arguable reasonable suspicion for the stop.  *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." (internal quotation marks omitted)).

criminal proceedings, nor were they in privity with the State of Florida. Second, the court found that Officer Springer was entitled to qualified immunity because he had arguable reasonable suspicion to stop Hargis, the search of Hargis's person was justified based on concerns about officer safety, and Officer Springer had probable cause to arrest Hargis. The district court also found that Hargis waived any argument that Officer Springer lacked probable cause to arrest him because he was not a convicted felon. Third, the district court found the City was entitled to summary judgment because Hargis failed to establish his constitutional rights were violated. The district court then declined to exercise supplemental jurisdiction over Hargis's state law claim for false arrest and dismissed it without prejudice. This appeal followed.

## II.  STANDARD OF REVIEW

"We review de novo the grant of summary judgment on qualified immunity grounds, drawing all inferences and viewing all of the evidence in a light most favorable to the nonmoving party." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1283 (11th Cir. 2012) (internal quotation marks omitted). We also review de novo the applicability of collateral estoppel principles. *Tampa Bay Water v. HDR Eng'g,*

*Inc.*, 731 F.3d 1171, 1177 (11th Cir. 2013).  We may affirm the district court's grant of summary judgment on any ground supported by the record.  *Walden*, 669 F.3d at 1283.

## III.  DISCUSSION

Hargis raises three main arguments[4] on appeal:  (1) collateral estoppel principles precluded a grant of summary judgment to Officer Springer on the basis that he had reasonable suspicion to stop Hargis; (2) Officer Springer was not entitled to qualified immunity because he lacked reasonable suspicion to stop Hargis; and (3) the district court erred in finding Officer Springer had probable cause to arrest him.  We address each issue in turn.

### A.  *Collateral Estoppel*

Hargis argues that when there has been a previous judicial determination an officer's actions violated the Fourth Amendment, the officer should be precluded

---

[4] Hargis also argues that (1) as a matter of public policy and fundamental fairness, collateral estoppel should bar an officer from being able to avail himself of qualified immunity when a court has granted a motion to suppress in a plaintiff's criminal proceedings; (2) the definition of the word "arguable" means "open to dispute" and thus summary judgment cannot be granted on the basis of arguable reasonable suspicion; (3) this Court should reconsider the rule that a lack of privity between an officer and the State of Florida renders collateral estoppel inapplicable; (4) this Court has implied that when a court has previously determined there was a Fourth Amendment violation, qualified immunity is precluded as a matter of law; (5) the cases on which the district court relied to conclude Officer Springer had arguable reasonable suspicion are distinguishable; (6) several district courts have found reasonable suspicion lacking in similar circumstances; and (7) this Court should follow the Florida state courts' interpretation of the reasonable suspicion standard.  To the extent these arguments are not addressed by our discussion of Hargis's three main issues, we conclude they lack merit and do not warrant further elaboration.

from obtaining summary judgment on the basis of qualified immunity.  Hargis also maintains the district court erred in finding the Appellees were not in privity with the State of Florida such that he could not avail himself of the doctrine of collateral estoppel.

We have held that "[i]t is settled that rules of collateral estoppel apply to actions brought under 42 U.S.C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings."  *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988) (citing *Allen v. McCurry*, 449 U.S. 90, 97-98 (1980)).  Accordingly, we look to the Florida law of collateral estoppel to determine whether the state trial court's grant of Hargis's motion to suppress was entitled to preclusive effect in his § 1983 action.  *See id.*; *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) ("Because Defendants rely on a state criminal judgment to bar a federal action, we look to the state's law governing collateral estoppel.").

"In Florida, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction."  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014) (internal quotation marks omitted).  First, Officer Springer is not collaterally estopped from arguing he had reasonable suspicion to stop Hargis because Officer Springer was not a party to

10

Hargis's state criminal proceedings, nor was he in privity with the State of Florida. *See Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998) (explaining a police officer was not a party to a defendant's state criminal proceedings nor was the officer in privity with the State of Florida for purposes of collateral estoppel). As the Florida Supreme Court has explained, "[p]rosecutors represent the interests of the people of the State of Florida, not the interests of the arresting police officer," and thus police officers have no greater interest in the outcome of criminal proceedings "than any other citizen of [the] state." *Id.*

Second, collateral estoppel is inapplicable because the issue before the state trial court was not identical to the issue in Hargis's § 1983 suit. *See id.* The issue before the trial court was whether Officer Springer had reasonable suspicion to conduct an investigatory stop. The issue in Hargis's federal case, by comparison, is whether Officer Springer had *arguable* reasonable suspicion. *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." (internal quotation marks omitted)). As the Florida Supreme Court has aptly noted, to accept the argument asserted by Hargis "would mean that all suppression orders would automatically trigger section 1983 liability—a ludicrous result." *Gentile*, 718 So. 2d at 783 (internal quotation marks omitted). Hargis's argument

11

also ignores the fundamental purpose of the qualified immunity doctrine, which is to shield from liability "all but the plainly incompetent or those who knowingly violate the law," *Franklin v. Curry*, 738 F.3d 1246, 1252 (11th Cir. 2013) (internal quotation marks omitted), and thus encompasses police offers who reasonably but mistakenly conclude reasonable suspicion is present, *Jackson*, 206 F.3d at 1165-66 ("A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity."). The district court did not err by concluding collateral estoppel was inapplicable to the instant case.

## B.  Arguable Reasonable Suspicion

Hargis contends Officer Springer lacked arguable reasonable suspicion to pull him over and the district court therefore erred by granting summary judgment to him on the basis of qualified immunity. Hargis argues the record is devoid of any indication he committed a traffic infraction and he was driving in a manner unrelated to criminal activity.

Contrary to Hargis's contentions, Officer Springer was entitled to qualified immunity for his investigatory stop. The parties do not dispute that Officer Springer was acting within the scope of his discretionary authority when he stopped Hargis, and Hargis therefore had the burden "to satisfy the following two-pronged inquiry:  (1) whether the facts that a plaintiff has shown make out a

violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Gilmore*, 738 F.3d at 272. It is well established that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson*, 206 F.3d at 1165 (internal quotation marks and alteration omitted). Whether an officer had reasonable suspicion to conduct a stop is determined by assessing the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). For reasonable suspicion to exist, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274. Furthermore, as noted above, "[w]hen an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." *Jackson*, 206 F.3d at 1166 (internal quotation marks omitted).

Based on the totality of the circumstances, the district court did not err by finding Officer Springer had arguable reasonable suspicion to believe Hargis was engaged or about to be engaged in criminal activity. Officer Springer observed a car driving slowly from behind a closed commercial building to the front of the

13

building in the early morning hours in an area he knew to have experienced a recent string of burglaries. Hargis also changed direction and headed back the way he had come, essentially making a full lap of the parking lot. That Hargis's actions may have been consistent with lawful conduct is immaterial because "[t]he Supreme Court has made it abundantly clear that, although an individual may ultimately be engaged in conduct that is perfectly lawful . . . officers may detain the individual to resolve the ambiguity." *United States v. Lewis*, 674 F.3d 1298, 1304 (11th Cir. 2012) (internal quotation marks and brackets omitted); *see also Arvizu*, 534 U.S. at 273 (explaining that, in deciding to conduct an investigatory stop, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person" (internal quotation marks omitted)). A reasonable officer in Springer's position could have believed reasonable suspicion existed to stop Hargis and he was therefore entitled to qualified immunity.

C.  *Probable Cause to Arrest*

Hargis argues the district court erred in granting summary judgment to Officer Springer because there was a genuine dispute of material fact about whether probable cause existed to arrest him. Specifically, there was a dispute as to whether Hargis was a convicted felon such that probable cause existed to arrest him for being a convicted felon in possession of a firearm. Hargis maintains

14

nothing in Officer Springer's deposition or his own deposition supported a finding there was probable cause to arrest him for being a convicted felon in possession of a firearm.  Hargis also contends the district court erred by granting summary judgment based on his failure to submit evidence other than his own assertion that he was not a convicted felon.  Hargis does not make any other arguments about the basis for his arrest.

We affirm the district court's grant of summary judgment because Officer Springer was entitled to qualified immunity.  Officer Springer had arguable probable cause to arrest Hargis for violating § 790.01 of the Florida Statutes, which prohibits individuals from carrying a concealed firearm.[5] *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (explaining that "arguable probable cause . . . is all that is required for qualified immunity to be applicable to an arresting officer" (emphasis and internal quotation marks omitted)); *see also* Fla. Stat. § 790.01(2) ("A person who carries a concealed firearm on or about his or her person commits a felony of the third degree.").  After restraining Hargis, Officer Springer frisked

---

[5] It is irrelevant to our analysis what offense Officer Springer may have announced orally or in his arrest report as the basis for Hargis's arrest.  *See Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002).  As we have explained, "when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."  *Id.* at 1196 (internal quotation marks and brackets omitted).

him and felt a gun in a holster on Hargis's waistband.[6]  A reasonable officer in the same circumstance and possessing the same knowledge as Officer Springer could have believed probable caused existed to arrest Hargis for carrying a concealed firearm on his person.  *See Lee*, 284 F.3d at 1195 ("Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." (internal quotation marks and brackets omitted)).  Accordingly, Officer Springer was entitled to qualified immunity for his arrest of Hargis.

Alternatively, Hargis is not entitled to relief on this claim because he failed to raise his specific argument before the district court in his response to the Appellees' motion for summary judgment.  In his response, Hargis argued only that Officer Springer lacked arguable probable cause to arrest him because it was not objectively reasonable to believe probable cause existed for an arrest.  Hargis never asserted any argument that he was not a convicted felon and he therefore waived the issue by failing to present it to the district court.  *See Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001); *see also OPIS Mgmt. Res., LLC v. Sec'y Fla. Agency for Health Care Admin.*, 713 F.3d 1291, 1297 n.7 (11th Cir. 2013) ("[T]he specific argument

---

[6] Hargis does not make any argument in his initial brief regarding Officer Springer's pat down.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

16

advanced on appeal was not sufficiently raised before the district court and we will not address it.").

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment.

**AFFIRMED.**